FILED
SUPERIOR COURT
OF GUAM

2014 AUG 19 PM 12: 07

CLERK OF COURT
BY: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CASE NO. CF0505-11 |
| v. | |
| BENNY SAM ROBERT, | **DECISION AND ORDER** |
| Defendant. | |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on August 12, 2014 on Defendant Benny Sam Robert's ("Defendant") Motion to Suppress. Attorney Anthony Camacho was present on behalf of the Defendant. Assistant Attorney General Brian Gallagher was present on behalf of the People of Guam ("Government"). Having reviewed the pleadings, the arguments therein, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On September 22, 2011, Defendant was indicted on One Count of Aggravated Murder (as a 1st Degree Felony) with a Special Allegation of Possession and Use of a Deadly Weapon in the Commission of a Felony, and One Count of Rioting (As a 3rd Degree Felony) with a Special Allegation of Possession and Use of a Deadly Weapon in the Commission of a Felony. On February 12, 2013, Defendant filed a Motion to Dismiss the Indictment with Prejudice; a Motion to Continue Trial; a Motion to Suppress Evidence; a Motion to Compel the Production of Discovery; a Motion to Sever Defendants; Motion for Leave of Court to Afford Notice that Defendant's Mental Condition May be at Issue; and a Motion for an Expert Evaluation. Having considered Defendant's motions, and the subsequent oppositions and replies from both parties, the Court issued a Decision and Order on March 28, 2013. The Court denied Defendant's

Motion to Dismiss, but granted Defendant's Motion to Sever Defendants, Motion to Continue Trial, Motion to Compel Discovery, and Motion for Expert Evaluation. (*See* Dec. & Order at 6, Mar. 28, 2013). In that Decision, however, the Court determined that Defendant's Motion to Suppress will be heard at a future hearing after the resolution of the issue of Defendant's mental capacity to withstand the proceedings against him. Later that same day, March 28, 2013, the Court received a Psychiatric Evaluation from Michael Kim, D.O., which determined that Defendant was competent to stand trial and be proceeded against.

In general, Defendant's Motion to Suppress is focused on whether the Guam Police Department ("GPD") advised Defendant of his *Miranda* rights prior to questioning him; whether Defendant's acknowledgement and waiver of those rights were voluntary, knowing, and intelligent in nature; and whether all evidence derived from a tainted interrogation should be suppressed as a fruits of the poisonous tree and fruits of ineffective consents and waivers. As this is a contested motion, the Court sought on numerous occasions to conduct an evidentiary hearing. For various reasons, including the inability to procure the necessary witnesses, the Court has continued the matter several times. However, at the last hearing of August 12, 2014, while the parties were contemplating whether they could proceed with an evidentiary hearing having only one witness present, the parties informed the Court that they instead would stipulate to submit this matter on the pleadings. Accordingly, the Court will make its determination on the briefs filed, without the benefit of having any sworn testimony.

## DISCUSSION

The Supreme Court of Guam has acknowledged that "[t]he Fifth Amendment of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself." *People v. Hualde*, 1999 Guam 3 at ¶ 20. "This privilege is fully applicable during a period of custodial interrogation." *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 460-461, 86 S.Ct. 1602, 1620-21, 16 L.Ed.2d 694 (1966). The Supreme Court of Guam has also stated that:

> To safe guard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the United States Supreme Court held in *Miranda* that 'suspects interrogated while in police custody must be told that they have a right

to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation.

*People v. Santos*, 2003 Guam 1 at ¶ 45 (citing, *Thompson v. Keohane*, 516 U.S. 99, 107, 116 S.Ct. 457, 462 (1995)). Additionally, police officers are not required to give *Miranda* warnings to everyone that they question. *See id.* (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714 (1977)). *Miranda* warnings are only required where there has been "such a restriction on a person's freedom as to render him in custody." *Id.*

Defendant's background facts state that "[i]t is well documented within discovery that Defendant Benny S. Robert had been drinking heavily prior to his contact with police." (Def.'s Mot Suppress ("Mot.") at 2, Feb. 12, 2014). "At about 4:40 a.m. on September 11, 2011, Detective Sang Q. To interviewed Defendant Benny S. Robert." *Id.* Next, Defendant states that "[d]uring [that] interview, Defendant Robert made numerous verbal statements, made a written statement, and signed a consent to GPD searching his person and seizing evidence to include his clothing and the swabbing of his hands." *Id.*

Given that general background, Defendant first identifies that "[p]age 315 of the discovery packet notes that at 2:24 a.m. on September 11, 2011, Officer Jerome Andrew interviewed Defendant Robert." *Id.* Next, Defendant indicates "Officer Andrew did not offer *Miranda* warnings to Defendant Robert but continued to question Defendant Robert about the incident and his involvement." *Id.* Lastly, Defendant provides that a "[a] custodial Interrogation Form outlining the warnings were not presented until approximately two hours later at 4:45 a.m.." *Id.* Defendant argues that "even with a subsequent warning, the initial taint [was] not cured." *Id.* Therefore, Defendant maintains that "any and all evidence related to the statements provided by Defendant Robert's interrogation by Officer Andrew should be suppressed." *Id.*

Second, Defendant argues that "[b]ecause Officer To failed to effectuate proper *Miranda* warnings, Defendant Robert's acknowledge[sic] and waiver of his *Miranda* rights was not voluntary, and intelligent in nature." *Id.* Along those lines, Defendant also argues that "[b]ecause Officer To's attempts to advise Defendant Robert of his Constitutional *Miranda* rights were delivered to a person whose ability to comprehend is limited and who was also

under the influence of alcohol at the time, subsequent waiver was not knowing, voluntary, or intelligent." *Id*. at 4.

Lastly, Defendant indicates that "the deficient interrogation by Officer Pangelinan[1] led to verbal and written statements made by Defendant Robert" and further, that "[w]ere it not for the information gathered during the interrogation by Officer To, the search and seizure of Defendant's person would not have occurred." *Id*. at 5. For those reasons, Defendant maintains that all evidence derived from the search and seizure of Defendant Robert's person should also be suppressed as fruits of the poisonous tree." *Id*. Defendant argues that "[t]his shall include confiscated items, photographs, and those statements by Defendant Robert in response to Officer To's subsequent questioning." *Id*.

The Government opposes and responds by first pointing out that:

> According to Defendant Robert's statement, he had been drinking at the warehouse when approached by two unknown males. After exchanging words, a fight ensued. One of the participants in the fight, a man who had been drinking with Robert, was apparently stabbed by one of the two that had approached Robert's group. Robert's group chased the two, and another individual from Robert's group was stabbed.

(Government's Opposition to Motion to Suppress ("Opp'n Mot.") at 2, Feb 19, 2014). The Government asserts that at this time, Defendant "was not a suspect in any crime, nor was he detained." *Id*. Also, Defendant "did not confess to the crime at this time." *Id*. Next, the Government provides that:

> The investigation continued. Mr. Robert was later detained, and then formally interviewed at approximately 4:30am that same day. At that time, he was advised of his Constitutional rights, and signed the appropriate waiver form. At that time, he gave a statement that corroborated the one he gave earlier.

*Id*. at 3. Ultimately, Defendant "eventually admitted stabbing Michael Pucholong." *Id*. With those facts presented, the Government first argues that since Defendant's confession was knowing, intelligent, and voluntary, it should be admissible in proceedings against him. *Id*. For

---

[1] Defendant's Motion makes only one mention of an Officer Pangelinan in its timeline of events. The Court is uncertain if this is a typographical error or whether there was in fact another Officer interrogating Defendant.

*People v. Robert*
Case No. CF0505-11
Decision and Order

support, the Government points out that "Defendant acknowledges that he signed a waiver of rights form prior to supplying his confession." *Id.* at 3; Ex. A. Additionally, the Government asserts that there was no indication that Defendant was intoxicated, or otherwise unable to understand his rights. *Id.* at 4. Lastly, the Government argues that since Defendant's initial statement was not the product of a custodial interrogation, and because he did not give any inculpatory statements at that time, there is no basis for suppressing Defendant's statements. *Id.* at 6.

In reply, Defendant first reminds the Court that:

> Here, Officer Andrew conducted an inquiry at 2:34am. Almost an hour later at 3:21am, Defendant was transported to Dededo Precinct. He was not advised of his *Miranda* rights until 4:40am by Officer To at the Tiyan Precinct. Only after two hours had lapsed and Defendant was transported from the scene of the alleged crime and then eventually Tiyan Precinct, did police advise Defendant Robert of his Constitutional Rights. With many uniformed and armed officers responding to the scene and swarming the area, any reasonable person would feel apprehensive. Further, when one of those officers approaches you and begins a tirade of inquiries amidst the presence of other police officials, there is no doubt a young man of Defendant Robert's age would feel that he was not at liberty to terminate the interrogation and leave the scene.

(Def.'s Reply ("Reply") at 2-3, Mar. 1, 2013). "Because a reasonable person in Defendant Robert's situation would not have felt at liberty to cease the interrogation and leave the area, Defendant Robert was subject to custodial interrogation and *Miranda* warnings were required." *Id.* at 4. Defendant again reminds the Court that "[b]ecause Officer To's attempts to advise Defendant Robert of his Constitutional *Miranda* rights were delivered to a person . . . [who] was also under the influence of at least alcohol at the time, subsequent waiver of said rights cannot stand because said waiver was not knowing, voluntary, or intelligent." *Id.* Lastly, the Defendant argues that "[h]ere, the deficient interrogation by Officer Andrew led to verbal and written statements made by Defendant Robert during the continued interrogation by Officer To. Were it not for the information gathered during the interrogation by Officer To, the search and seizure of Defendant's person would not have occurred." *Id.* at 5.

The First issue is whether the initial interview conducted by Officer Andrew constituted a custodial interrogation, thus requiring the administering of *Miranda* rights. When determining

*People v. Robert*
Case No. CF0505-11
Decision and Order

whether a person is in custody the Court is to apply the following test:

> The first inquiry is, what were the circumstances surrounding the interrogation. The second inquiry is given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. After addressing the two inquiries, the court must then resolve the 'ultimate inquiry,' which is '[was] there a formal arrest or restraint on freedom of movement of the degree associated with the normal arrest.

*People of Guam v. Farata*, 2007 Guam 8 at ¶ 23. (internal citations omitted). Given what has been put forth in pleadings, the circumstances surrounding the interrogation were that Officer Andrew began questioning Defendant at 2:34 a.m., then subsequently transported Defendant to Dededo precinct at 3:21 a.m. and thereafter transported Defendant to Tiyan, where Defendant was advised of his *Miranda* rights at 4:40 a.m. Without the benefit of testimony from the officers, the pleadings imply that Defendant was engaged with GPD for a considerable amount of time before first receiving *Miranda* warnings. From the time Officer Andrew began his questioning, he was able to elicit from Defendant a sequence of events, as detailed in his narrative report. Given the amount of time that elapsed during Officer Andrew's questioning and the time Defendant was first given *Miranda* warnings, along with Officer Andrew's ability to formulate a detailed narrative report, the Court finds that a reasonable person in Defendant's situation would not feel at liberty to terminate the interrogation and leave. With regard to the ultimate inquiry of whether there was a formal arrest or restraint on freedom of movement, there is no indication as to whether Defendant was handcuffed or physically restrained. However, during the transport from the crime scene to Dededo precinct and then to Tiyan, it is reasonable to conclude that there was a restraint on Defendant's freedom of movement to a degree necessary to effectuate such transport. Also, the Government's argument that Defendant did not make any inculpatory statements at that time is unavailing. *See Farata*, 2007 Guam 8 ¶ 36 ("An 'incriminating response' is 'any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial'"). For those reasons the Court finds that Officer Andrew's questioning amounted to a custodial interrogation warranting *Miranda* warnings. Accordingly the Court will suppress all statements made to Officer Andrew.

The next issue is whether Defendant's acknowledgement and waiver of his *Miranda* warnings were voluntary, knowing, and intelligent in nature. The Supreme Court of Guam has stated that "the voluntary, knowing and intelligent nature of a *Miranda* waiver is to be gleaned from the totality of the circumstances, which includes the 'background, experience and conduct of the defendant." *Ferata*, 2007 Guam 8 ¶ 46 (internal citations omitted). Further the issue of a "whether a *Miranda* waiver is not coerced and therefore valid depends on consideration of 'two distinct dimensions'":

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* "Before a criminal defendant's statements can be used against him, the People must prove, by a preponderance of the evidence, that the defendant's statements were made knowingly, intelligently, and voluntarily." *People of Territory of Guam v. Muna*, 1992 WL 245624 at*4 (D. Guam A.D.). In *Muna*, defendant argued that "the interrogating officer drafted the final (and incriminating) statement and that he was coerced into accompanying the officers to the station because the officers threatened to impound his car." *Id.* Further, although an expert psychologist testified that defendant's intellectual abilities "fell in the 'upper portion of the mild mental retardation range,' the Officer administering the waiver testified that after reading to Defendant each line on the waiver form, defendant said he understood the contents." *Id.* at *5. The Court in *Muna* ultimately found that the People showed, by a preponderance of the evidence, that defendant's statements were made voluntarily. *Id.*

In this case, Government Exhibit A suggests that Defendant provided a statement freely and voluntarily after being fully advised and understanding his constitutional rights. On the one hand, the Government argues that a review of the circumstances in this case "show defendant's waiver and statements were voluntary." (Opp'n Mot. at 4). The Government states that "[t]here is no indication that the officers engaged in any coercive behavior." *Id.* On the other hand,

Defendant disputes the circumstances surrounding the statement. (Mot. at 4). Defendant points out that he consumed alcohol consumption prior to the interrogation. *Id.* Also, Defendant questions the two different handwritings on the statement form and whether the Defendant knew, understood, and appreciated what he was executing. *Id.* The Government responds by arguing there was no indication that Defendant was intoxicated, or otherwise unable to understand his rights. (Opp'n Mot. at 4). Considering all the circumstances, specifically that the Government provided a copy of the Defendant's statement, with Defendant's initials by the waiver box, coupled with the Government's assertion that there was no indication that Defendant was intoxicated or otherwise unable to understand his rights, the Court concludes that the Government has shown by a preponderance of the evidence that Defendant's statements were made voluntarily, and knowingly. Thus, the Court will not suppress Defendant's statements resulting from Officer To's interrogation on that basis.

The final issue is whether, under the fruit of the poisonous tree doctrine, all the evidence gathered as a result Officer Andrew's initial interrogation should be suppressed as a fruits of the poisonous tree and fruits of ineffective consents and waivers. "Although evidence subsequently obtained as the 'fruit' of a prior illegality is suppressible, the court must initially resolve 'whether the challenged evidence was come at by exploitation of the [initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *People v. Santos*, 2003 Guam 1 at ¶ 65 (citing *Segura v. United States*, 468 U.S. 796, 804-05, 104 S.Ct. 3380, 3385 (1984). "Subsequent statements made, even after an illegal arrest, are not automatically, excluded if 'intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint." *Id.* (internal citations omitted).

In this case, Defendant argues that the interrogation by Officer Andrew led to verbal and written statements made by Defendant during the continued interrogation by Officer To. (Reply at 5). Defendant contends "were it not for the information gathered during the interrogation by Officer To, the search and seizure of Defendant's person would not have occurred." *Id.* The Government relies on its argument that since Defendant's initial statement was not the product of a custodial interrogation, it is not subject to suppression.

The Court agrees with Defendant. Defendant's statements to Officer To, by all indications, came as a result of Defendant's initial statements to Officer Andrew. Otherwise, had they not, it is reasonable to conclude that there may have been no reason to transport Defendant twice and continue the investigation. Thus, as there is nothing to suggest any intervening events to break the causal connection between the initial interview and the subsequent confession, the Court is unable to conclude that the confession was sufficiently an act of free will to purge the primary taint of Officer Andrew's interrogation. For those reasons the Court will suppress the evidence derived from the interrogations of Officer Andrew, Officer To, and the resulting searches and seizures.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 19th day of August, 2014.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the
Original hereto was placed in the
court box of

Date: 8/19/14  Time: 1:30pm

Deputy Clerk, Superior Court of Guam

_People v. Robert_
Case No. CF0505-11
Decision and Order